## JOHN M. COLLINS *vs.* CHARLES BILDERBACK.

Under the act of 1826, " relating to fugitives from labor," which prohibits the captain or commander of a vessel from carrying slaves out of the State, a party is not obliged to alledge or prove that the captain *knew* the person carried out to be a slave.

Neither is he bound to alledge in terms that the person was a *fugitive* from labor, as the act prohibits the taking out persons " held to labor or service."

A negro girl slave going out in company with her mistress, will be regarded as going with her master's consent. The wife's authority, as the agent of the husband, to take her, will be implied, unless the captain has notice or knowledge to the contrary. In such case it is proper to plead the husband's license. A plea setting out the facts is demurrable.

In actions ex delicto special matters in justification or excuse may be pleaded specially, or may be given in evidence under the general issue.

SUSSEX, April term, 1849. This was an action on the case, under the statute of 1826, [*Digest* 291,] against a steamboat captain, for carrying a slave out of the State.

The declaration contained several counts, two of which were as follows:—

IN THE SUPERIOR COURT,

*October Term,* 1847.

*Kent county,* ss.   John M. Collins, the plaintiff, by Willard Saulsbury, his attorney, complains of Charles Bilderback, the defendant, of a plea of trespass on the case:—For that, whereas, the said plaintiff, before and at the time of committing the grievance by said defendant in this count hereafter mentioned, was a citizen and inhabitant of the State of Delaware, and being such citizen and inhabitant of the said State, did hold to labor and service a certain negro girl called Alice, and which said negro girl so as aforesaid named and called Alice, was a person held to labor and service by the said plaintiff, he the said plaintiff then being a citizen and inhabitant of the State of Delaware, yet the said defendant well knowing the premises, but contriving and wrongfully and injuriously intending to injure the said plaintiff, and to deprive him of the labor and service of the said negro girl named and called Alice, heretofore and after the passing of a certain act of the General Assembly of the State of Delaware, made and passed at Dover, on the 19th of January, 1826, entitled " An act relating to fugitives from labor," to wit: on the 11th day of August, 1847, and before the commencement of this suit, to wit: at, &c., wrongfully and injuriously did carry away and transport by water out of the State of Delaware, the said negro girl called and named Alice, the said negro girl then

and there being a person held to labor and service by the said plaintiff, he the said plaintiff then and there being a citizen and inhabitant of the State of Delaware, and he the defendant then and there being a captain of a certain vessel called the Portsmouth, and he the said defendant then and there knowing that the said negro girl was a person held to labor and service by the said plaintiff, and that he the said plaintiff was a citizen and inhabitant of the said State of Delaware, contrary to the said statute in that case made and provided, by means whereof an action hath accrued to the said plaintiff to have and demand of and from the said defendant the sum of five hundred dollars, &c.

And whereas, also heretofore, to wit: on, &c., at, &c., the said plaintiff was a citizen and inhabitant of the State of Delaware, and the owner of a certain other negro girl commonly called Alice, then and there held to labor and service under and according to the laws of the said State; and whereas, also, the said defendant on the day and year aforesaid, at the county aforesaid, was the captain of a certain steamboat called the Portsmouth; yet the said defendant, so being then and there captain of the said steamboat, not regarding his duty, wrongfully and injuriously afterwards, to wit: on the day and year last aforesaid, at the county aforesaid, did in and aboard the said steamboat carry and transport by water out of the said State of Delaware, the said last mentioned negro girl so held to labor and service, and of whom the said plaintiff was the owner as aforesaid, contrary to the form of the statute in such case made and provided; whereby and by force of the said statute the plaintiff hath sustained damage to the value of five hundred dollars, to wit: at the county aforesaid.

The defended pleaded—1. not guilty; 2. by leave, &c., a license from the plaintiff; 3. a license from Mrs. Collins, wife of the plaintiff; 4. that Mrs. Collins, wife of the plaintiff, at the time mentioned in the declaration, took passage on board said steamboat Portsmouth, as a passenger, on a visit from this State to Philadelphia, in the State of Pennsylvania, and then and there took with her, and carried said negro Alice as her negro servant, and under her own special charge and care; 5. that Mrs. Collins, at the time mentioned, &c., was removing with her family from this State to the State of Pennsylvania to reside, took passage on board said steamboat Portsmouth, and did remove the said negro Alice as her slave to said State of Pennsylvania. Replications and issues.

*Bayard* and *Saulsbury*, for plaintiff, after joining issue on these pleas, moved the court to strike out all the pleas except the general issue, on the ground that they amounted to the general issue.

*The Court* refused to strike out, conceding that matter amounting to the general issue could not be pleaded with the general issue in an action on the case. The court said these special pleas were matter of excuse or justification, and might be pleaded with the general·issue. [*Gould's Plead.* 346.] In actions on the case arising ex delicto, matters which go in avoidance of the action have to a considerable extent been admitted in evidence under the general issue. "It is difficult to discover any precise *principle* by which this practice may be justified, or any definite rule by which to limit its precise extent. The practice appears to be, in a great measure, an arbitrary departure from the original principles of the law, and as such, to rest *on authority*, rather than any known legal reason." [*Gould Plead.* 333-4.]

The rule, however, has become general, that in actions on the case ex delicto, the defendant may prove under the plea of *not guiltly*, almost every special matter of defence which conduces to show, that at the time of pleading, he is not liable to the plaintiff's demand, e. g. a license or any other justification, a former recovery, release, accord and satisfaction.

But these special defences and all others which *confess* the truth of the declaration *may be specially pleaded*, instead of being given in evidence, under the general issue. For regularly no plea which admits the truth of the declaration can be said to amount to the general issue.

Motion refused.

The plaintiff's counsel then moved for leave to amend the issue on the fourth plea, by replying that the wife took the slave off without the consent of her husband.

The court refused this also, because it was the third application to amend in this case, and was made at the moment of trial.

Plaintiff's counsel then moved for leave to withdraw the replication to the fourth plea and demur; which the court allowed. Demurrer to the fourth plea, and joinder. The case went on to trial on the jury issues.

Mary Ann Collins, the plaintiff's daughter, proved that the negro slave Alice left her father's house on the 11th of August, 1847, in company with her mother, and went to Lewestown; and on Friday

morning, August 14th, she went to Philadelphia, on the steamboat Portsmouth, Captain Charles Bilderback. She had been held by plaintiff as a slave. This witness and her mother, (plaintiff's wife,) were with her; she was taking Alice up with her to Philadelphia; she went up with the intention of staying; had no goods with her. Alice was in her six years old then. Mrs. Collins went to house-keeping in Philadelphia in about two weeks.

Question.—Why did your mother leave your father?

This was objected to and insisted on, as going to show that the wife was driven off by her husband's cruelty. The question was waived.

Witness.—Mother took the girl with her when she left my father. He was absent from home.

The sheriff of the county proved that when he arrested Captain Bilderback, he said he was aware of the circumstances under which the girl was removed; had inquired about the matter, and was told it was safe to take her out of the State. Collins was a citizen of the State at the time.

*Mr. Layton* moved a nonsuit; because it was not proved (and al-ledged) that the negro girl was a fugitive from labor.

*Layton.*—The act of assembly relates to fugitives from labor. It was passed on the application of the States of Maryland and Vir-ginia, and was designed to be in aid of the acts of Congress relating to fugitives from labor. It is to receive a sensible construction; and cannot be made to include every case of taking a slave out of the State, but only of taking away fugitive slaves. It cannot apply to the case of taking a slave out in company of his master or mis-tress. The master or mistress is entitled to travel with their slave. And the declaration ought to aver the knowledge of the captain that the negro is a slave. [9 *Law Lib.* 690; *Dwar. Stat.* 40; 4 *Wash. C. C. Rep.* 396; 1 *Chit. Pl.* 379, 72, 377; 1 *Harr. Rep.* 131; 2 *East.* 92; 1 *Wend. Rep.* 376; 4 *Harr. Rep.* 217.]

*By the Court:*—The application is upon the grounds—1. That it it is not averred that the slave was a fugitive from labor; and 2. that a case within the statute has not been made out.

The fourth section of the act of 1826, imposes the penalty on any captain of a vessel carrying out of the State a person "held to labor" or service by a citizen or inhabitant of this State; and it no where in terms refers to such person as a fugitive from labor. It cannot, therefore, be necessary in pleading, to do any thing more

than bring the case within the requirements of the act.   If such a case is proved, the plaintiff is entitled, prima facie, to recover; and cannot be nonsuited.   Yet the law requires such a sensible construction as not to apply it to a case of carrying out a slave with the consent of his master, or by his command; and this necessarily implies the case of a fugitive from labor.   Every case of a slave going out against, or without, the master's consent, amounts to a flying from his service; but it would not be a just or even tolerable construction of this act, to apply it to the case of a slave who goes out neither to escape from his master, nor to elude his service, but on his service, by his command, with his permission, or even in his company.   It will be for the jury to say whether there is any thing in the evidence in this case to take it out of the plain object and purpose of the act, within which it is sufficiently brought by the allegations and proofs to entitle the plaintiff to go to the jury.

Nonsuit refused.

The case was then argued before the jury; Mr. Layton insisting that the plaintiff was bound to alledge and prove knowledge on the part of the defendant that the girl Alice was a slave, and a fugitive from labor; and that from the fact of the girl going off in company with her mistress, she must be taken to have gone with the consent of the master.

*Mr. Bayard*, contra, argued that the very object of the law was to cut off all questions under which its provisions might be violated, by making the captain of a vessel transporting him out of the State liable at all events, if he turn out to be a slave, whether he knew him to be a slave or not.   If he takes out a colored man, he takes the risk.   The only limitation which the act will admit of, is the knowledge, or means of knowledge, on the part of the captain, that he was carrying the person out.   That restriction he agreed was demanded on general principles; and also that the exportation was without the consent of the master.   For if the master consented to it, he could not recover a penalty provided in his favor.

In every case of transportation without the consent of the master, the slave must be regarded as a fugitive slave, because he is in fact escaping from his master's service.   He agreed that where he was transported with the master's consent, this action would not lie.

As to the evidence of that consent, he said the consent of the wife is no evidence of the husband's consent.   She is not the mistress of the slave in any legal sense.   Her act can bind the husband

only as the agent of the husband; where the agency is directly proved or may be inferred from the marriage relation.

The property of the slave is in the husband alone. The wife has no control over it. She can no more authorize a person to take out his slave, than she could sell his horse without his consent. It is then for the party setting up the act of the wife as the agent of her husband, to show the husband's authority. It is not for the other side to disprove it.

The Chief Justice charged:—

BOOTH, *Chief Justice:*—The design of the law was to afford protection to the owners of slaves. It therefore, inflicts a penalty of $500 upon the captain of a vessel, or other person, who carries by water, a slave out of the State. The law is severe, and it is the only one that makes a party criminally liable, without a criminal intent. The act imposes the penalty, although the act of transportation is done without *knowledge* or *notice* that the negro is a slave; or is escaping from the owner's service.

Hence it is unnecessary to alledge in the narr. or to prove at the trial, that the defendant knew that the negro was a slave. Such a construction would render the law nugatory.

The plaintiff alledges in his declaration, that he was a citizen of this State; that the girl Alice was held to labor or service by him; and that the defendant being the captain of a steam vessel, carried the said Alice out of this State.

Upon proof of the allegations contained in this declaration, a case is made out on the part of the plaintiff, which prima facie, would entitle him to a verdict. If such allegations are made out by evidence, the presumption is that the slave was carried out of the State against or without the master's consent, and this entitles him to a verdict, unless such presumption is rebutted by testimony on the part of the defendant.

This may be done by proof of the express consent of the plaintiff, or of such facts from which his consent may be implied. The reasonable presumption arising from the facts in evidence would be, that the plaintiff's wife, daughter and slave Alice, were on board of that steamboat with the assent of the plaintiff.

The wife is under the control of the husband; has the management of the household and of domestic concerns generally. Her contracts in regard to necessaries for herself and the family bind the husband. A female slave, particularly of the tender age of

Alice, is considered as under the control and management of her mistress, and owes obedience to her.

In all these cases the wife is presumed to act under the authority and with the consent of her husband. But this authority or consent may be revoked by him, whenever he considers his wife unfit to be entrusted with the management of such domestic affairs as are generally confided to women. But no such authority can be implied on the part of the husband, as to those matters which according to the usual course of business, or the customs of society, are not entrusted to the wife.

Hence in the case put by plaintiff's counsel, the sale by the wife of the husband's horses or cattle, would not be valid, unless his express authority was shown; and that the wife was made his agent.

In case of a farmer's wife selling poultry, eggs and butter, the husband's authority and consent are implied, because such is the usual course of dealing as regards such matters. The wife, therefore, having an implied authority over a female slave such as Alice, and a right to command her obedience and her services, such authority or right continues, until countermanded by the husband, and third persons who may be affected by such countermand, have knowledge or notice of it.

If, therefore, Mrs. Collins was at Lewestown, openly and publicly with her daughter, and Alice as a female slave, and took passage in the steamboat, and without any thing to appear to the captain that the carrying away the negro was against the husband's will; the fair and legal inference would be that she was acting with his consent and by his authority. But if the plaintiff countermanded the authority of his wife, or revoked his assent, and the defendant had knowledge or notice of it, the presumption of law would be repelled, and the plaintiff in such case would be entitled to a verdict.

Verdict for plaintiff.

When the jury returned to the box, and before delivering the verdict, *Mr. Layton* excepted to that part of the charge, in which it was stated that it was not necessary to state in the narr. or prove at the trial, that the defendant knew the negro was a slave.

Argument of the demurrer to the fourth plea:—

*Mr. Bayard.*—The fourth plea of the defendant is as follows:—

"By leave, &c., the defendant further pleads that the said Mrs. Collins, wife of the said plaintiff, at the time mentioned in said declaration, took passage on board the steamboat Portsmouth, as a passenger, on a visit to Philadelphia, in the State of Pennsylvania; and then and there took with her and carried the said negro Alice, as her negro servant, and under her own special charge and care, and this, &c., to wit: at the county aforesaid." To this plea there is a general demurrer.

The question is, does the plea state any fact which bars the right of action. That it does not is evident, as all the facts stated may be true, and yet the plaintiff entitled to recover.

It is true the court have decided that the presence and authority of the wife would be *evidence* of the plaintiff's consent to the transportation of the slave out of the State; yet it is *but evidence*, and capable of being rebutted by other evidence. The fact which ought to have been pleaded in bar is "that the slave Alice was transported by the plaintiff's consent or authority." Now, the presence of the wife is prima facie evidence of the plaintiff's consent; but the plaintiff may show that it was against his consent, and therefore non constat that he did consent, *which alone* constitutes a bar. The fatal defect in the plea is, that it pleads evidence of a fact instead of the fact itself; and evidence in its nature not conclusive, but merely prima facie.

The rule is "evidence shall never be pleaded, because it tends to prove matters in fact; and therefore, the matter in fact shall be pleaded." [*Dowman's case*, 9 *Coke's Rep.* 10 *b.*, and there cited 9 *Ed.* 3, 5 *b.* 6. *a.*] The principle can be easily illustrated in a case of common occurrence. After twenty years the law presumes payment of a bond, if there is no rebutting evidence, such as payments, admissions, &c.; but in order to take advantage of this presumption of law, the defendant must plead payment; and then if the bond appears to be more than twenty years old, and there is no counter evidence, the law presumes it to be paid. Suppose, instead of pleading the fact which the presumption of law *may* prove, namely payment, the defendant pleaded to debt on bond, that the bond was executed and delivered more than twenty years before action brought, the plea would be clearly bad, because it would merely plead prima facie evidence of a fact instead of the fact itself, and issues must be issues of material facts, and not of evidence of those facts. Indeed, if such a plea could be maintained, it would not be

necessary to plead it, as the plaintiff's narr. always shows the time of executing the bond, and unless he averred also some additional fact to rebut the presumption arising from the lapse of time, the declaration would be demurrable on the same principle which attempts to sustain the plea; and yet a more absurd notion can scarcely be conceived. There can be no distinction between the case stated and the plea in this cause. The court have decided that the presence and authority of the wife is prima facie evidence of the husband's consent, nothing more; and therefore the defendant should have pleaded that the slave was transported by the plaintiff's consent, and then given in evidence the presence and authority of the wife in support of the fact pleaded, as in part he did on the trial; and the jury having heard the testimony on both sides, would have found the material fact whether the slave was transported by the plaintiff's authority. The plea contains no allegation of the plaintiff's consent or authority.

*Mr. Layton*, for defendant.—The general demurrer admits the facts stated in the plea. But the plaintiff's counsel, in support of the demurrer, insists that "the plea states no fact which bars the right of action." Do the facts thus pleaded and admitted, bar the plaintiff's right of action? I think they do. The plea avers a state of facts from which the license of the master must necessarily be inferred. It was proper thus to plead those facts, specially, and not to offer them in evidence under the plea of license from the plaintiff. Or whether the license of the master be properly thus inferred, or not, the plea is a justification in this, that Mrs. Collins, the wife, whose servant this negro slave was, and is here admitted to have been, took passage, &c., and then and there took with her and carried said negro Alice as her servant, &c. Now, if this negro Alice was the servant of Mrs. Collins, and she took this servant voluntarily with her, as a passenger on board the steamboat, it certainly can be no offence against any statute of this State, for Captain Bilderback to give passage to a lady and her servant. According to the customs of society, a lady travelling in or from a slave State, is usually attended by her female servant, which servant is considered as *necessary* to the comfort and convenience of her mistress. Female servants, with the management of the whole interior domestic arrangements of the family, are also, by the customs of society, as well as from the necessity and propriety of the case, consigned to the management and direction of the wife, who

thus becomes the mistress of the family, and of those servants. Whatever, therefore, the wife does in the management of her own peculiar department, she does lawfully. She acts by the authority of her husband, as his agent, and unless *notice be specially given by the husband* to those whom the wife employs, or with whom she deals, in the management of her department, they cannot be made trespassers, whilst thus acting under her authority. *Notice* must be brought home to those employed by, or dealing with the wife, that she is acting *against* the will of her husband, before they can be treated as trespassers. A license from the wife, therefore, under such circumstances, in the absence of any such notice, is available, by way of defence, as would be a license from the husband. These principles I apprehend are sound; and sustained by numerous analagous decisions. If they be sound, the defendant is entitled to judgment upon the demurrer.

It is, however, to be premised, that a master or mistress may lawfully travel from this State by land or water, with his or her servant, and return again into this State, without incurring any forfeiture whatever; and if this may lawfully be done, it can certainly be no offence in any one, to accommodate the master or mistress, and his or her servant, by giving them passage, either by land or water.

The defendant's counsel relies upon the following authorities on this point: "*During cohabitation* the law will, from that circumstance, presume the assent of the husband to all contracts made by the wife for necessaries suitable to his degree and estate;" and "this principle is anxiously adopted by the law on every possible occasion," &c. [1 *Selw. N. P.* 230, (Farrand's edition, 1807;) 1 *Esp.* 441, Hodges *vs.* Hodges; and 4 *Esp. N. P. C.* 42, Harris *vs.* Morris.] "While they cohabit, the husband shall answer all contracts of hers for necessaries; for his assent shall be presumed to all necessary contracts, upon the account of cohabiting, *unless the contrary appear* : per Holt, C. L. Ethrington *vs.* Parrot, 1 *Salk.* 118, and *Lord Raym.* 1006. And see also 1 *Selw. N. P.* 233; *ib.* (*n.* 3,) and 234, (*n.* 4;) 4 *Harr. Rep.* 385, Fredd *vs.* Eves; and 1 *Lord. Raym.* 444, Todd *vs.* Stokes. Now, in the case before the court, it is not pretended that Captain Bilderback had any notice from the plaintiff that the wife was acting against his will and consent. So too, Cook *vs.* Wortham, 2 *Str.* 1054; 3 *Selw. N. P.* 967. Plaintiff brought trespass against defendant for breaking and entering his house, and

debauching his daughter, per quod, &c., and verdict for plaintiff, &c. Motion for a new trial, on the grounds—1. Because the verdict was against evidence, there being no proof of any trespass committed in breaking the house, but the contrary, that the window having been left open by the plaintiff's daughter, the defendant entered by virtue of a license from her, &c. Sed per cur. as to the first ground, the defendant's entry into the house *without the privity* of the father *or mother*, is plainly a trespass, &c." [3 *Esp. N. P.* 967.] In this case the court certainly recognized the position, that if defendant had entered with the privity of the *mother, the wife,* he would *not* have been a trespasser. The authorities on this point, might be greatly multiplied.

But it is further contended by plaintiff's counsel, in his argument upon the demurrer, that the defendant "pleads evidence of a fact instead of the fact itself." I admit the general correctness of the rule of evidence cited by plaintiff's counsel, that "evidence shall never be pleaded, because it tends to prove matter in fact; and therefore, the matter in fact shall be pleaded."

But the counsel mistakes the character of the plea. It is not averred by defendant, *as evidence* of the husband's *assent,* merely, that the wife took this little negro child Alice along with her as her body servant; but the plea avers, distinctly, as *a fact,* that the wife took this negro child with her, as her negro servant; and maintains the position, that under the circumstances of this case, the wife had a right to take; and her assent, and acts, were and are a sufficient justification to the defendant, in the absence of notice of dissent on the part of the husband.

The wife's right to the management and control of this little child has before been shown, and the case of Cook *vs.* Wortham, *Stra.* 1054 is again referred to, as indicating, clearly enough, the opinion of the court, that if the defendant had pleaded entry into the house by the privity and license of the *mother*, it would have been a good plea. This mode of pleading, however, by way of justification, in actions of trespass, is no new thing; it is the constant daily practice in our courts, as—1. where an officer justifies breaking the doors, for the execution of process. [3 *Selw. N. P.* 1123,] and the authorities there cited. 2. as that the defendant entered to demand payment of his debts, &c. [*Com. Dig.*; *Pleader,* 3, *n.,* 35; *Cro. Eliz.* 896.]

In all these, and many analogous cases, the *facts* are pleaded,

from which the law infers the right of the defendant to enter, or to do the act complained of.    It is not a plea of the evidence of a fact, but of a fact itself; which if proved, or admitted to be true, the law infers the justification of the act, and the innocence of the defendant.    As in the case of Cook *vs.* Wortham, *Stra.* 1054, before cited.    If the plea there had been that the defendant had entered by the privity or license of the wife, it would clearly have been a good plea; and if the plaintiff had gone to trial on that issue, and it had been proved, or he had demurred to it, judgment would have been rendered for defendant; and to avoid the force and effect of such a plea of license by the wife; in all cases where the wife herself would have a right to act, the plaintiff must *new assign*, and reply the special matter so as to make the defendant a trespasser ab initio, by showing that he had abused his license.

But here, there is no new assignment; no averment that the defendant had notice of the dissent of the husband; but a general demurrer is entered, admitting the truth of the plea pleaded; and it follows that if the wife had a right to the custody of the negro child, and took her with her as her body servant, in the absence of any dissent on the part of the husband, the defendant may well plead the license of the wife, and under this demurrer is entitled to judgment.

At the following term the court gave judgment for the plaintiff on the demurrer.

The exception to the charge was not taken up; the case having been compromised by agreement between the parties.

*Bayard* and *Saulsbury*, for plaintiff.

*Layton*, for defendant.